

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4854 | **DATE** | 3/14/2002 |
| **CASE TITLE** | Dolores J. Russo vs. B & B Catering, Inc. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment against defendant B&B Catering is granted with respect to liability. The claim against defendant Dziedzic is dismissed. Status hearing set for April 2, 2002 at 9:15am.

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOLORES J. RUSSO,            )
                             )
            Plaintiff,       )
                             )
       vs.                   )  No. 00 C 4854
                             )
B & B CATERING, INC., and    )
JEFFREY DZIEDZIC,            )
                             )
            Defendants.      )

DOCKETED
MAR 1 8 2002

MEMORANDUM OPINION AND ORDER

Plaintiff Dolores J. Russo filed this action alleging that her employer, defendant B&B Catering, Inc. (B&B), violated ERISA, 29 U.S.C. §§1022, 1024(b)(1), by failing to timely notify her that her health insurance had been terminated. Plaintiff also alleges that defendant Jeffrey Dziedzic, a B&B employee, is individually liable as a plan fiduciary. The parties have filed cross motions for summary judgment. Plaintiff agrees to the dismissal of Dziedzic, leaving B&B as the only remaining defendant. Subsequent to defendant's motion, plaintiff filed an amended complaint adding a conversion claim. The instant motions, however, only address the ERISA claims. For the following reasons, we grant summary judgment for plaintiff with respect to liability.

BACKGROUND

In 1996, B&B offered its employees medical insurance through a group policy. It used a broker to select a carrier and contracted with United Health Care. Eligible employees were invited to enroll and to have their premiums deducted from their regular paychecks. Initially the company contributed 50% of the premiums and employees paid the remainder. B&B filed

34

for Chapter 11 bankruptcy protection in December 1996, leading United Health Care to cancel the policy in February or March 1997. Employees were informed of this cancellation sometime in March. Later in 1997, B&B contracted with another medical insurer, Protective Life. Once again, the company contributed 50% of the premium, and withheld the remaining 50% from participating employees' paychecks. That policy ended in June or July 1998.

In September 1998, B&B contracted with Rush Presbyterian (Rush) as its new group insurer. For a brief period it paid 100% of the premiums. In January 1999, approximately four months after the initiation of the policy, B&B informed its employees that it would cease contributing to the insurance premiums entirely -- employees themselves would now be responsible for 100% of the premiums. However, the company would continue to deduct the relevant premiums from weekly paychecks and pay the insurer directly. Employees were given the option to decline coverage. This they could do by notifying Rush directly, rather than by going through B&B. Rush sent its materials, including descriptions of the coverage, identification cards, and termination forms, to covered employees at their homes, not through B&B.

B&B's financial difficulties continued, and although it continued to deduct insurance premiums from employees' paychecks, several of its checks in payment for the premiums were returned unpaid by the bank. As a result, Rush cancelled the policy in June 1999. B&B claims it had no knowledge of the cancellation until it was informed by its broker in September 1999, shortly after which time it informed its employees, including plaintiff.

B & B reimbursed plaintiff for any medical expenses incurred by her during gaps between insurance policies. However, because of the time lapse following Rush's termination,

plaintiff's preexisting condition has prevented her from acquiring new insurance.

## DISCUSSION

The court may only grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We must also draw all inferences and view all admissible evidence in the light most favorable to the non-moving party. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This does not mean there must be absolutely no evidence supporting the non-moving party, but rather there is not enough to support a reasonable jury verdict. *Id.* at 248.

### I. Does ERISA apply?

An ERISA employee welfare benefit plan must be "(1) a plan, fund or program; (2) established or maintained; (3) by an employer or employee organization or by both; (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits ...; (5) to participants or their beneficiaries." Postma v. Paul Revere Life Ins. Co., 223 F.3d 533, 537 (7th Cir. 2000). The second element, whether plaintiff's health insurance plan was established or maintained by B&B, is at issue here.

The critical factor is the employer's level of administrative involvement in the plan. Defining which employees are eligible to participate, contributing to premiums and performing some administrative functions can all implicate ERISA. On the other hand, allowing insurance carriers access to employees on a neutral basis, or withholding the employees' premiums from paychecks is generally not enough to bring a plan within ERISA's coverage. *See* Brundage-Peterson v. Compcare Health Services Ins. Corp., 877 F.2d 509, 510

(7th Cir. 1989). We also consider a Department of Labor regulation that excludes certain group insurance plans from ERISA, if

> (1) No contributions are made by an employer or employee organization;
> (2) Participation the program is completely voluntary for employees or members;
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> (4) The employer or employee organization receives no consideration in the form of cash or other wise in connection with the program, other than reasonable compensation , excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 CFR 2510.3-1(j).

For a plan to remain outside of ERISA, employer neutrality is imperative. If the arrangement favors a finite set of plans over employees shopping for insurance in the open market, the favored plans are considered to have been established by the employer. *See* Stange v. Plaza Excavating, Inc., 2001 WL 114407 at *4 (N.D. Ill. Feb. 7, 2001), *citing* Thompson v. American Home Assurance Co., 95 F.3d 429, 436 (6th Cir. 1996) *and* Johnson v. Watts Regulator Co., 63 F.3d 1129, 1134 (1st Cir. 1995). Although not dispositive, an employer's payment of employees' premiums will almost invariably implicate ERISA. First, the regulatory safe harbor explicitly excludes such plans. And second, employer contributions will favor the employer-sponsored plan over others, negating neutrality. It is noteworthy that neither party has identified a case where the court found ERISA inapplicable to the plan in question. *See, e.g.,* Brundage-Peterson, 877 F.2d at 511 (employer contracted with two insurers, designated eligibility and paid premiums); Postma, 223 F.3d at 538 (employer paid premiums and performed administrative functions); Sofo v. Pan-American Life Ins. Co. v. Contingency

Reserouces, Inc., 13 F.3d 239, 241 (7th Cir. 1994) (employer contracted with insurer, designated eligibility, paid 50% of premiums, performed some administrative functions and declared intent to invoke ERISA); Lopez v. Guardian Life Ins. Co. of Amer., 834 F.Supp. 251 (N.D. Ill. 1993) (employer responsible for notifying employees of continuation rights, revising monthly payment schedules and assuming liability for continued health benefits).

For better or worse, Congress legislated broadly and the Supreme Court has construed that language to reach virtually all employee benefit plans. *See* Brundage-Peterson, 877 F.2d at 512, *citing* Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987). We are also mindful of the Seventh Circuit's warning that a "complicated, variable, case-by-case standard ... would create more uncertainty and litigation than the gain in substantive justice would warrant. Employers, employees, and insurance companies would have no clear idea whether their rights and obligations were defined by federal law or by state law." Brundage-Peterson, 877 F.2d at 511. To avoid this problem we must construe the safe harbor narrowly. Only a minimal level of employer involvement is necessary to trigger ERISA.

The plan in question was established in September 1998, when defendant contracted with Rush to provide group coverage for its employees. The employer's responsibilities included providing claim forms to employees, accepting proof of loss forms from employees and notifying employees of continuation rights.[1] This is far more active than simply permitting an independent insurer access to its employees. At the plan's inception B&B also paid the entire premium for its employees. This arrangement is comparable to others that have been held to

---

[1] The parties dispute who determined eligibility. Plaintiff avers that B&B limited coverage to full-time employees living in the Chicago area. Defendant maintains that Rush imposed these conditions, not B&B. Given the other facts, we find this dispute immaterial.

be within ERISA's coverage in that defendant contracted with a single insurance provider and provided some administrative support for that plan. *See, e.g.,* Brundage-Peterson, Postma, Sofo, Lopez, *supra*. We find that ERISA applied to B&B's group health plan as initially established.

Defendant counters that once it ceased contributing to premiums in January 1999, its plan should no longer have been governed by ERISA. The addition of employer contributions can certainly bring a non-ERISA plan within the statute. *See* Postma, 223 F.3d at 538. But neither party has cited any authority on the issue of whether terminating the employer's contribution can remove an ERISA plan from the statute's purview. The test's disjunctive language – established *or* maintained – suggests that ERISA still applies. Even if the plan is no longer maintained by the employer, it was still established by the employer. Once an employer has established an ERISA plan, it may well have to terminate the plan and establish a new one if it wants to be outside the federal statute. B&B did not do so. When defendant discontinued its contributions, it explicitly stated that it was modifying the plan, not terminating it. This alone is sufficient to keep the plan within ERISA. Regardless, the plan as modified was still an ERISA plan. Although participation in the plan was voluntary, B&B was not neutral. It distributed, collected and remitted claim forms for only one insurer. This administrative support put Rush in a favored position.

The bigger picture only corroborates this result. Over a three-year period, defendant initiated contracts with three different insurance companies. In the interim, B&B self-insured, reimbursing employees for medical expenses incurred between contracts. Defendant was much too involved in the whole insurance process to avoid ERISA or qualify for the safe harbor.

## II. Did Defendant Violate ERISA?

Plaintiff alleges that B&B, as plan administrator, was obligated to notify her of circumstances that could result in loss of benefits under the plan and, as a plan fiduciary, was obligated to inform her that her insurance coverage had been terminated. Defendant denies having knowledge of the termination before September 1999, and maintains it was not a plan fiduciary.

Employers must inform plan participants of any circumstances that could affect benefits available under the plan. 29 U.S.C. §1022. Defendant asserts that it complied with this by informing plaintiff that Rush had terminated the plan in September, when defendant claims it first learned of the termination. We disagree. Defendant's office manager admits having knowledge that the bank had refused to honor the premium checks. The policy explicitly states (if it were not already obvious) that failure to pay premiums is grounds for termination. Nor was this a single incidence. Multiple premium checks had been returned unpaid, and one of B&B's previous insurers had terminated a policy for the same reason – unpaid premiums. Defendant can hardly claim ignorance of the fact that plaintiff's benefits were in jeopardy.

We now turn to the question of whether B&B was a plan fiduciary and therefore responsible for notifying participants within 60 days of any modification or termination. 29 U.S.C. §1024(b)(1). The statute defines a fiduciary as one who, among others, "exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. §1002(21)(A). "ERISA makes discretion the *sin qua non* of fiduciary duty." Pohl v. National Benefits Consultants, Inc., 956 F.2d 126, 129 (7th Cir. 1992). It is equally clear that fiduciary duties are divisible. One can be a fiduciary with respect to only specific functions. *See* Plumb

v. Fluid Pump Service, Inc., 124 F.3d 849, 854 (7th Cir. 1997). Although collecting premiums from employees and transferring those funds to the insurer would normally be considered ministerial, *see* 29 CFR 1509.75-8(8), the facts here aptly demonstrate that there is an element of discretion in that process – defendant controlled the withheld funds. Defendant did not segregate the premiums in a separate account for transfer to Rush. Instead, defendant commingled the withheld premiums with other working capital in its regular checking account. Those funds were ultimately spent on other things and the checks to Rush bounced. Once those funds were withheld from employees' paychecks, they were plan assets. Defendant's decision not to earmark those funds for health insurance premiums was discretionary. For the limited purpose of ensuring that those assets were used to pay health insurance premiums, defendant was a fiduciary.

B&B's group plan contract does not explicitly state who is responsible for notifying participants of premium deficiencies. Absent an express provision to the contrary, Illinois law puts this burden on the employer. *See* Martz v. Union Labor Life Ins. Co., 757 F.2d 135, 141 (7th Cir. 1985); P.I.A. Michigan City, Inc. v. National Porges Radiator Corp., 789 F.Supp. 1421, 1425 (N.D. Ill. 1992). In P.I.A., the court held that the same default rule applied under ERISA. The employer, not the insurer, was responsible for informing participants that the premiums had not been paid. 789 F.Supp. at 1425. Although not directly applicable, the court found it relevant that the employer was specifically responsible for informing participants of continuation rights because it was "an indication that the policy does not contemplate notice by [the insurer]." *Id.* at 1426 n.4. Defendant's contract with Rush contains an identical provision making B&B responsible for notifying participants of continuation benefits, and we

agree with the inference drawn in P.I.A. When defendant's failure to segregate the withheld funds led to returned checks, ultimately leading to termination of coverage, it was obligated to notify its employees so they could pay the premiums directly or secure other insurance. Defendant's failure to do so violated ERISA.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment against defendant B&B Catering is granted with respect to liability. The claim against defendant Dziedzic is dismissed.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 14, 2002.